Judge Cake:*
In 1747, David Stuart purchased and received a conveyance from M’Clenachan, of a tract of land containing 331 acres. In 1748, Stuart sold and conveyed 57 acres, part of this tract, to James Miller. In 1754, Miller sold and conveyed this 57 acre tract, to Jones Henderson. In 1778, Henderson sold and conveyed this tract to Parris, the owner and possessor at the time of filing this bill. *395 David Stuart, in 1763, sold and conveyed to John Miller, the tract of land he had bought of M ’ Ciena chan, by the same boundaries that he had bought, and for the same numher of acres; thus including the 57 acres he had before sold and conveyed to James Miller. In 1784, Miller sold and conveyed the land, by the same description as to quantity and boundaries, to Randolph; who, in the same way, sold and conveyed to Kinney, in 1808. Kinney, discovering the mistake, and deficiency of quantity, refused to pay two bonds which he owed Randolph, and he filed this bill against Kinney, the heirs, executors, Sic. of Stuart, and of Miller, calling them all before the Court, and praying, that to save a multiplicity of actions, the whole might be settled in one suit. The Chancellor dismissed the bill for want of jurisdiction.
The counsel, in the argument, contended for equitable jurisdiction, on two grounds; 1st, as a bill of peace; 2d, as a bill quia timet.
A bill of peace (say the books) is made use of, where a person has a right which may be controverted by various persons, at different times, and by different actions; or where several persons, having the same right, are disturbed; and the Court will thereupon prevent a multiplicity of suits, by directing an issue to determine the right, and ultimately an injunction. 1 Madd. 135-6-7; 2 Sch. & Lefr. 208.
Lord Redesdale says, “If there is an assertion of title by suit at law, in which the party fails, but yet asserts it frequently in the same manner, such assertion becomes oppressive; and as it may be made by ejectment, (a proceeding which may be repeated forever,) Courts of Equity may interfere to prevent such an oppressive proceeding. It is on this ground, that Courts of Equity have interfered by bills of peace.” In Tenham v. Herbert, 2 Atk. 483, Lord Hardwicke says, “It is certain, where a man sets up an exclusive right, and where the persons who controvert it with him, are very numerous, and he cannot, by one or *396 two actions at law, quiet their right, lie may come into this Court first, which is called a bill of peace; and the Court will direct an issue to determine the right, as in all disputes between lords of manors and their tenants, and between tenants of one manor and another; for in these cases, there would be no end of bringing actions of trespass, since each action would determine only the particular right in question, between plaintiff and defendant.” In Mitford’s Pleadings, 146, speaking of demurrers for joining distinct claims in one bill, it is said, “ a demurrer of this kind will hold only where the plaintiff claims several matters of different natures; but when one general right is claimed by the bill, though the defendants have several and distinct rights, a demurrer will not hold; as where a person claiming a general .right to the sole fishery of a river, filed a bill against several persons, claiming several rights in the fishery, as lords of manors, occupiers of lands, or otherwise. For in this case, the plaintiff did not claim several separate and distinct rights, in opposition to several separate and distinct rights, claimed by the defendants; but he claimed one general and entire right, though set in opposition to a variety of distinct rights, claimed by the several defendants.”
Let us examine whether the case at bar falls within these principles. Those claiming the 57 acre tract, under the deed of 1747, from Stuart to James Miller, were in possession by virtue of that conveyance. The subsequent deed, therefore, from Stuart to John Miller, for the whole tract, though it included these 57 acres, could pass neither the possession nor the title; and as Miller had neither possession nor title to these 57 acres, he could convey neither to Randolph, nor Randolph to Kinney. ^The clauses of general warranty, in the deeds from Stuart to John Miller, and from Randolph to Kinney, j could not operate as real covenants, unless the vendees entered; and could pass to the assignee, only along with the land, and as incident to it. But here the land not passing, the warranty could *397 not pass.) A disseisor may convey and warrant the land; for there may be a fee simple in a disseisor. But a person against whom there is an adversary possession, cannot make a warranty, which will pass to an assignee, because he cannot convey. Upon the covenants for good title and quiet enjoyment, in the deed from Stuart to John Miller, and for quiet enjoyment in that from Miller to Randolph, the purchasers might immediately, on the execution of the deeds, have maintained actions of covenant against their respective vendors; and upon their deaths, this right of action devolved on their executors or administrators; and whatever they might have recovered in such actions, would have been personal assets in their hands. Randolph was not the assignee of Stuart’s covenant with Miller, broken long before the conveyance to him. Nor was Kinney the assignee of Miller’s covenant (already broken) with Randolph. Randolph had no claim at law, or in equity, directly against Stuart; nor Kinney against Miller or Stuart. The rights and responsibilities of the parties neither arise out of, nor depend on, nor are in any way connected with each other. They are distinct in their nature, different in their amount, and distant in point of time, as to their birth. Miller and his representatives have had precisely the same rights against Stuart and his representatives, for upwards of sixty years; which they ■would have, if Randolph’s representatives were now to recover against them. Such recovery would give them no new rights, nor other nor better remedy; and just so it is with Randolph and Kinney, from the dates of their several deeds. It is not possible, therefore, to bring the case within the principles which govern bills of peace.
IIow is it, with respect to bills quia timet?
“ When a person is apprehensive of being subjected to a future inconvenience, probable, or even possible, to happen, or be occasioned by the neglect, inadvertence or culpability of another, or where any property is bequeathed to one after the death of another, and which the former is *398 desirous of having secured safely for his use;” or where a surety is fearful of injury, from the neglect of his principal to pay the debt; in all these cases, and others of this kind, the bill quia timet may be resorted to. But the case 0f the plaintiff does not belong to this elass at all. He is no surety; no expectant of a bequest after the death of another; nor has he any thing to apprehend from the neglect, inadvertence, or culpability of another. His remedies are in his own hands. He may sue Kinney on his bonds; and for the last forty years and upwards, he has had the power of pursuing his remedy against Miller, or his representatives. A recovery against him by Kinney was not necessary to give, nor could it fortify that right. Nor does the claim to an account of assets better the case. That can. never be a foundation for jurisdiction, until the plaintiff shews that he has a right to such account in the suit he is prosecuting. If he cannot proceed-to a final decree, because it is not a case fit for equity, his call for an account of assets will not change the nature of his ease, and give jurisdiction. Otherwise it would be easy to bring almost any case within the jurisdiction of equity. Indeed, the representatives of Miller (who are liable to the plaintiff, if any of the defendants are) could not be called on in equity for an account of assets, till the plaintiff’s demand was established against them at law. The consent of the plaintiff and Kinney, cannot confer jurisdiction in a case like this, where the objection appears upon the face of the bill, and there are so many other parties. If the bill were dismissed as to all the others, and retained as to Kinney, I do not see what decree could be rendered for the plaintiff. Against Kinney singly, he has no claim which equity could enforce. Nor is this a case of account, where equity may decree for a defendant against a plaintiff The decree must be affirmed. ■
Judges Green, Coalter and Cabell, concurred, and the decree was affirmed.

 The Pjiesident, absent.